People of the State of Illinois ex rel. Daniel J. O'Brien, Appellee, v. Board of Commissioners of Cook County et al., Appellants.

Gen. No. 41,088.

Heard in the third division of this court for the first district at the February term, 1940. Opinion filed May 22, 1940.

THOMAS J. COURTNEY, State's Attorney, for appellants; JACOB SHAMBERG, WILLIAM J. TUOHY and NEAL J. McAULIFFE, Assistant State's Attorneys, and GEORGE F. MULLIGAN, JR., of Chicago, of counsel.

JAMES W. BREEN, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court. Daniel J. O'Brien was born on June 7, 1866. He en-

tered the service of the county of Cook on November 26, 1910, and remained in such service until September 30, 1938, when he resigned, having completed a service of 27 years and 10 months. He became 65 years of age on June 7, 1931. He requested the Retirement Board of the County Employees' Annuity and Benefit Fund of Cook County to grant him an annuity. The board granted an annuity in the sum of $54.96 per month beginning as of October 1, 1938, the day following his resignation from the service. On February 15, 1939, he served a notice on the president and members of the Board of Commissioners of Cook County that he was entitled to an annuity of $80.64 per month, and therein demanded that such board appropriate an amount of money sufficient to pay him an annuity of $80.64 per month. The Board did not comply. On May 16, 1939, in the superior court of Cook county he filed a petition for a writ of mandamus against the Board of Commissioners of Cook County and the Retirement Board of the County Employees' Annuity and Benefit Fund for the purpose of enforcing his demand. Defendants admitted the truth of the facts alleged, but denied that the relator was entitled to any increase in his annuity. The cause was submitted on the undisputed facts, and the court found that relator was entitled to receive a monthly annuity of $80.88, and commanded the members of the Retirement Board to furnish to the members of the Board of Commissioners all data necessary to enable them to provide funds for the payment of the monthly annuity of $80.88, commencing with October 1, 1938, and further commanded the Board of County Commissioners to ''pass such legislation as may be necessary to appropriate, or to transfer into the proper account or accounts sufficient money to enable plaintiff to receive a monthly annuity of $80.88 from October 1, 1938, down to the present time, and to continue to provide sufficient revenue for the payment of his monthly annuity at the rate of $80.88 during the period of his

natural life." It will be observed that the petition for the writ asks for a monthly annuity of $80.64 and that the writ commands the payment of $80.88. The relator states that he intended to amend his petition so as to have it conform to the writ, but inadvertently failed to do so. However, the defendants are not making any point as to the difference between the amount claimed in the petition and the amount directed to be paid by the court order. This appeal is prosecuted for the purpose of reversing the order awarding the writ of mandamus.

The first annuity or pension act affecting the employees of Cook county was approved June 29, 1915. This act established a voluntary pension fund for the employees of the county. The Act of 1915 and the pension board established thereunder was superseded by an act approved July 2, 1925, which provided for the creation of an employees' annuity and benefit fund, to be administered by a board of trustees to be known as the "Retirement Board of the County Employees' Annuity and Benefit Fund." Section 11 thereof authorizes the County Board to levy a tax of not more than 35/200ths of a mill on the dollar of the assessed valuation of all taxable property in the county for the purpose of providing revenue for such annuity and benefit fund, and that the amount of the tax to be levied in each year shall be certified to the County Board by the Retirement Board. Under the provisions of the Act of 1925, the employees of Cook county are divided into two general classes, namely, "present employees" and "future entrants." These two general classes embrace several distinctive groups within each class. However, the only group of interest in the consideration of this case is the group to which the plaintiff belonged, namely, the group defined in paragraph (a) of the definition of "Present Employee" in section 12 of the act (par. 199, ch. 34, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 100.397]). Such paragraph defines the group as

"Any employee who shall be in the employ of such county on the thirty-first day in the month of December of the year in which this Act shall come in force and effect in such county who shall become a contributor to the annuity and benefit fund herein provided for on the first day in the month of January of the first year after the year in which this Act shall come in force and effect in such county." Plaintiff was in the employ of Cook county on December 31, 1925. He was a contributor to the annuity and benefit fund on January 1, 1926. The dispute between the parties arises from the construction of the provisions of the statute governing the annuity accumulations applicable to relator. Section 15 of the act (par. 202) directs that "age and service annuity" shall be provided for future entrants and present employees. Section 17 (par. 204) provides that annuities shall be based on deductions from salary received subsequent to January 1, 1926. Under this section $3\frac{1}{4}$ per cent of the salary is deducted for age and service annuity and $5\frac{3}{4}$ per cent is contributed by the county, or a total of 9 per cent and contributions by the county terminate when the employee attains the age of 65 years. Section 18 (par. 205) directs that annuities to be known as "prior service" annuities shall be provided for present employees in addition to age and service annuities. Section 19 (par. 206) lays out the method of accumulating the money for the prior service annuities. These two annuities, namely, age and service annuities and prior service annuities, together constitute the total annuity payable to a present employee. No other or different annuity, pension, bonus or award is granted to him in consideration of his service as an employee of the county. The annuity so granted is based on his salary deductions and contributions by the county allocated to his credit, until he attains the age of 65 years. These credits are improved by the addition of interest each month. Section 19 of the act (par. 206) prescribes the method of building up the monetary accumulation

in computation of prior service annuity. The section directs that as soon as the Retirement Board ascertains the amounts which have been deducted from the pay of each present employee and applied to the county pension fund in operation at the time the superseding act came into effect, and also all other amounts paid into such fund according to law by such present employee, before January 1, 1926, the board shall credit to the account of such employee in the annuity and benefit fund an amount equal to the aggregate of all such sums deducted from his salary and otherwise paid by him, with interest on such amounts at the rate of 4 per cent per annum from the end of the month in which such amount has been deducted or paid, to January 1, 1926, and shall also credit to the account of such employee an amount equal to 9 per cent of his annual salary as it shall be on January 1, 1926, for a period of time equal to that of the service rendered by such employee prior to January 1, 1926, with interest thereon at the rate of 4 per cent per annum to January 1, 1926, such interest being computed on the assumption that $\frac{1}{12}$ of such 9 per cent of such annual salary was due at the end of each month of such service. The section further provides that each amount to the credit of such person employed shall be improved with interest at the rate of 4 per cent per annum during the time thereafter that such present employee remains in the service of the county until the amount of annuity to which such present employee shall have a right, shall be fixed according to the provisions of section 27 (par. 214). It will be observed that under section 17, $3\frac{1}{4}$ per cent of the salary is deducted for age and service annuity and the taxpayers of the county are required to contribute $5\frac{3}{4}$ per cent. These two items make up the total of 9 per cent, which forms the basis for the annuities. Therefore, when under section 19 the board credited relator's account with an amount equal to 9 per cent of his annual salary from the commencement of his

employment until January 1, 1926, on the basis of his salary as of January 1, 1926 (prior service annuity), it credited him not only with the full amount of the county contributions (5¾ per cent) for the entire period of his service, but also with the entire amount of salary deductions which would have been paid by him had deductions been made from his salary at the rate of 3¼ per cent from the beginning of his employment with the county down to January 1, 1926. Section 17 also provided that the 3¼ per cent of salary, representing salary deductions for the prior service annuity fund, for the period from the beginning of his employment, down to January 1, 1926, which the county advanced to him for credit on his annuity account, should be paid back by means of continued deduction from his salary after he attains the age of 65 years while he is in the service of the county, the purpose of these deductions being to repay the amount advanced by the county for the period prior to January 1, 1926. It is undisputed that under the 1926 Act the contributions by the county are required to be terminated at the time the employee attains the age of 65 years, while the deductions from the salary of the employee are to be continued after his attainment of that age until the amount deducted from his salary and paid into the annuity fund, plus his payments in the pre-existing pension fund, is equal to the amount that would have been deducted from his salary, had deductions at the rate of 3¼ per cent been made from his salary during the entire period of his service, including the period of service rendered by him prior to January 1, 1926. The reason why this group of employees was required to continue paying the salary deductions into the fund after the attainment of the age 65, was because the county, out of taxes, had placed to the credit of the employee concerned the full amount of county contributions for his period of service prior to January 1, 1926, and had also credited to his account, out of taxes, the full amount of the deductions from

salary which this section required him to repay into the fund after attainment of the age 65, if he continued in the service.

However, the legislature adopted an act to amend certain sections of the County Employees' Annuity and Benefit Fund Act, which amendatory act was approved July 10, 1935. Section 61a thereof, (par. 248a, ch. 34, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 100.447(1)]) reads:

"Notwithstanding the provisions of any other section or sections of this Act, all deductions heretofore made from the salary of any employee in the service on July 1, 1935, and paid into the annuity and benefit fund herein provided for after the said employee reached the age of sixty-five (65) years and prior to July 1, 1935 shall be used to increase the annuity of said employee in the same manner and to the same extent as deductions made from the salary of said employee before the age of 65 years is reached. Beginning with July 1, 1935, no deductions shall be made from the salary of any employee after said employee shall have reached the age of sixty-five (65) years." At the same session of the legislature, another amendment was adopted, known as Section 61b, (par. 248b [Jones Ill. Stats. Ann. 100.447(2)]). This amendment was approved July 6, 1935, and reads:

"Section 61a of this Act as amended, shall be interpreted to apply only to employees described in subdivision (a) in the definition of present employee in section 12 hereof. In the case of any employee other than one described in the definition of present employee in said subdivision (a) of said section 12, deductions from salary and contributions by such county shall be made as provided in sections other than section 61a of this Act as amended, until the amount of annuity to which such employee shall have a right shall become fixed. When the annuity of any such employee shall become fixed, no further deductions shall be made from

the salary of such employee for any purpose of this Act." After relator reached the age of 65 years, on June 7, 1931, deductions were made from his salary until July 1, 1935, which was the date when section 61a became effective. From the latter date no deductions were made from his salary. In computing relator's annuity, the board credited him with deductions from his salary from July 7, 1931, when he became 65 years of age, to July 1, 1935, when section 61a became effective, plus interest on such deductions from the respective dates of payment to July 1, 1935. The present controversy arises from the conflicting contentions as to the meaning of section 61a. This section provides that notwithstanding the provisions of any other section or sections of the act, all deductions theretofore made from the salary of any employee in the service on July 1, 1935, and paid into the annuity and benefit fund after the employee reached the age of 65 years, and prior to July 1, 1935, shall be used to increase the annuity of the said employee in the same manner and to the same extent as deductions made from the salary of the said employee before the age of 65 years is reached. It is the contention of the relator that unless the county, concurrently with each deduction from plaintiff's salary from June 7, 1931, when he became 65 years of age, until July 1, 1935, contributes 5¾ per cent of the salary of the employee with each deduction from the salary of the employee, the deductions made from the salary of relator will "not in the same manner and to the same extent," increase his annuity as deductions made from his salary before he reached the age of 65 years would do. It is the theory of relator that it is the duty of the county to make contributions concurrently with each deduction from the salary of the relator after he reached the age of 65 years up to and including July 1, 1935. The defendants, on the other hand, insist that the only modification and the only additional grant given to the employees affected

was that they should have placed to their credit for annuity purposes "deductions made from their salaries" and paid into the fund subsequent to their attainment of age 65 years, and prior to July 1, 1935, and that no further deductions should be made from their salaries after July 1, 1935. Defendant argues that there is no provision in section 61a that the Retirement Board, acting for the taxpayers, should pay into the fund to the credit of such employee any contributions by the county for any period subsequent to the employee's attainment of age 65. Defendants further state that the accumulations to the credit of the relator which were and are used in computing his annuity, are the following: 1. The accumulated sum credited to him for prior service annuity, upon his attainment of age 65. 2. The accumulated sum credited to him upon his attainment of age 65 from deductions made from his salary and paid into the pre-existing county employees' pension fund. 3. The accumulated sum credited to him at age 65 from salary deductions, beginning with January 1, 1926. 4. The accumulated sum at age 65 derived from contributions by the county until his attainment of age 65. 5. The accumulated sum upon July 1, 1935, derived and resulting from the release of the deductions made from his salary after he had reached the age of 65 years and prior to July 1, 1935, granted to him by section 61a of the act. On the basis contended for by defendant, relator's annuity was computed as of the age of 65 on an allowance of a total sum of $5,542.92. The monthly annuity of $54.96 was arrived at according to the formula prescribed by the act, using the American Experience Table of Mortality, and interest at the rate of 4 per cent per annum, and the tables set out in "Life Expectancies" by E. T. Spurgeon, (1932 edition, pages 128–129). The relator contends that if he be credited with additional contributions by the county from July 7, 1931, when he reached the age of 65 years, to July 1, 1935, plus interest

on such contributions, and interest on his accumulations of $5,307.30, (the amount to his credit at age 65) to July 1, 1935, and if his annuity be computed as of age 69 instead of age 65, he will receive a monthly annuity of $80.88.

The annuity fund is derived from deductions from the employees and contributions by the taxpayers of the county, plus interest. Throughout the act the distinction between deductions and contributions is emphasized. The age of 65 years, specified to be used in computing annuities, was adopted to encourage employees to retire after reaching that age. For this reason the act provides that no contributions are to be made by the county after the employee attains the age of 65 years, and that no matter what his age should be when he retired, an employee's annuity would be fixed on an assumed age of 65 years. In this manner, continued service of an employee (after his annuity accumulation had reached its maximum) would not increase his annuity, and any possibility of increasing his annuity was not held out as an inducement to an employee to continue in the service. On the basis of relator's reckoning, his annuity would be computed as of the age of 69 instead of as the age of 65. We agree with the relator that the act is remedial and should be given a liberal construction. Section 61a states that the deductions theretofore made shall be used to increase the annuity of the employee in the same manner and to the same extent as deductions made from the salary of an employee before the age of 65 years is reached. The board did increase relator's annuity by adding the deductions for the period from June 7, 1931, to July 1, 1935, plus interest. The manner and extent of increasing the annuity by adding the deductions and interest was in accordance with directions of the legislature. Had the legislature intended to increase the annuity by a contribution from the taxpayers of the county, (in addition to crediting the salary that had

been deducted) it would have so indicated by the act. By crediting the relator with salary deductions from 1931 to 1935, the Retirement Board gave to him all the benefit which the act intended. A careful consideration of the entire act does not show a legislative intent that contributions shall be made by the county after the employee reaches the age of 65 years. If the county had not credited the relator with the $3\frac{1}{4}$ per cent which (theoretically) he should have contributed to the fund from the commencement of his service up to January 1, 1926, it would have been unnecessary to deduct from his salary after he reached the age of 65 years. The purpose of section 61a was to give him credit in the annuity fund for the amount deducted from his salary after he became 65 years of age and until such amendment went into effect. Section 61b was adopted at the same session of the legislature as section 61a, and is complementary thereto. The purpose of section 61b is to make it clear that the beneficial features of section 61a are limited to the employees described in subdivision (a) in the definition of ''Present Employee'' in section 12. This is the group to which relator belonged. Section 61b, after limiting the operation of section 61a to employees of the group to which relator belonged, specifically provided that in the case of the other and less favored employees of the county ''deductions from salary and contributions by such county'' should continue to be made as provided in the sections other than section 61a of the act. It is manifest, therefore, that at the time the amendments known as sections 61a and 61b were adopted, the legislature had in mind the distinction between deductions and contributions, and deliberately left out of section 61a any requirement for contributions by the county. Section 61a deals solely with contributions by the employee and makes no reference to contributions by the county. Section 61b deals with both. Section 61a does not make any reference to changing the age as of which annuities shall be com-

puted, nor as to payment of interest on all contributions, to age 69. Nevertheless, relator's claim for the increase of his annuity requires both a change from age 65 to 69 as the basic age of compensation, and the granting of additional interest to age 69 on all contributions, as well as the payment of additional contributions by the county to age 69. As we have seen, the act specifically designates age 65 as the fixed and terminating age to be used. Viewing the amendments of 1935 and their relationship to the entire act, we are of the opinion that the deductions made from the time he attained the age of 65 years until July 1, 1935, have been used to increase his annuity in the same manner and to the same extent as deductions made from his salary before he arrived at the age of 65 years. Therefore, we conclude that the court was in error in holding that the relator had the right to be credited with contributions from the county from June 7, 1931, to July 1, 1935.

A second point urged by the defendants is that section 60 (par. 247, ch. 34, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 100.446]) provides that "the retirement board shall have exclusive original jurisdiction in all matters of claims for annuities, pensions, benefits or refunds under this Act, and its actions on such claims shall be reviewable by the common law writ of certiorari only." The instant action is in the form of a petition for mandamus. The defendants answered and did not raise any point as to the propriety of the form of the action. The parties were in agreement on the facts and treated the case as if it were a petition for a writ of certiorari. As this point of procedure was not raised in the trial court, we will not consider it here. Defendants also point out that the commissioners of Cook county, in appropriating the full amount permitted by the act, performed their full duty, and that the allowance and the administration of the fund is in the hands of the trustees of the Retirement Board. As

we have decided that section 61a does not require the county to contribute to the annuity fund after the relator became 65 years of age, it is unnecessary to consider this and other points that are raised.

For the reasons stated, the judgment order of the superior court of Cook county is reversed.

*Judgment reversed.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.